IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **MINERVA DOBSON, o/b/o** <br> **C.D., a minor child,** <br><br> **Plaintiff,** <br><br> v. <br><br> **ANDREW M. SAUL,** <br> **Commissioner of the Social** <br> **Security Administration,** <br><br> **Defendant.** | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) Case No. CIV-19-322-RAW-SPS <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## REPORT AND RECOMMENDATION

The claimant Minerva Dobson requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying benefits for her son C.D. under the Social Security Act. The claimant appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining C.D. was not disabled. For the reasons discussed below, the Commissioner's decision should be AFFIRMED.

**Social Security Law and Standard of Review**

Disability for persons under the age of eighteen according to the Social Security Act is defined as a medically determinable physical or mental impairment or combination of impairments that causes marked and severe functional limitations and that can be expected to cause death or that has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. § 416.906. Social Security Regulations implement

a three-step sequential process to evaluate a claim for Child's Supplemental Security Income Benefits under Title XVI of the Social Security Act.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

---

[1] Step one requires claimant to establish he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 416.971-416.976. Step two requires claimant to establish he has an impairment or combination of impairments that is severe. If claimant is engaged in substantial gainful activity or is found not to have a medically determinable impairment or the impairment causes a slight abnormality or combination of slight abnormalities resulting in no more than minimal functional limitations, he is considered not disabled. At step three, claimant's impairment must meet, medically equal, or functionally equal the severity of an impairment in the listing of impairments found in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments that meet or medically equal the requirements of the listing or that functionally equal the listing and meet the duration requirement will be found disabled. See 20 C.F.R. § 416.924(a)-(d)(2).

## Background and Procedural History

C.D. was twelve years old at the time of the administrative hearing (Tr. 41). The claimant alleges C.D. was disabled as of March 28, 2017, due to attention deficit hyperactivity disorder ("ADHD"), borderline intellectual functioning, and generalized anxiety disorder (Tr. 168). On November 30, 2017, the claimant filed an application for supplemental security income benefits under Title XVI (42 U.S.C. § 1381 *et seq*.) (Tr. 16, 158-66). Her application was denied. ALJ Michael Mannes conducted an administrative hearing and determined that C.D. was not disabled in a written opinion dated December 18, 2018 (Tr. 16-32). The Appeals Council denied review, so the ALJ's findings represent the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step three of the sequential evaluation. He determined C.D. had the severe impairments of ADHD and borderline intellectual functioning, but that such impairments did not meet and were neither medically nor functionally equivalent to any of the relevant listings (Tr. 19-32). The ALJ thus concluded that C.D. was not disabled (Tr. 32).

## Review

The claimant contends that the ALJ improperly evaluated the evidence related to the functional domain of attending and completing tasks. The undersigned Magistrate Judge finds this contention unpersuasive.

The relevant medical evidence reveals that nurse practitioner Jodie Green regularly treated the claimant for, *inter alia,* ADHD from April 2017 through July 2018 (Tr. 315-36,

366-75, 383). Initial treatment notes reflect a noticeable difference in C.D.'s behavior, attention, and concentration with non-stimulant medication, but C.D. stopped taking this medication by November 2017 due to side effects (Tr. 319-32). Ms. Green prescribed a different non-stimulant medication at the end of November 2017 and treatment notes through July 2018 reflect C.D. was doing well with this medication (Tr. 329-30, 367-75, 383). In September 2018, C.D. was prescribed a stimulant medication due to side effects from the non-stimulant medication (Tr. 423-36).

On November 27, 2017, Dr. Kathleen Ward performed a psychological consultative examination of C.D. (Tr. 295-301). She observed that C.D. appeared to give good effort but was impulsive and easily distracted (Tr. 296). She administered the Wechsler Intelligence Scale for Children-V, the results of which revealed a full-scale IQ score of 76, placing C.D. in the borderline range (Tr. 299-300). Dr. Ward noted C.D.'s working memory was quite low, but not statistically discrepantly low, and that it was likely secondary to his overall impairment due to impulsivity (Tr. 300). She diagnosed the claimant with ADHD and borderline intellectual functioning (provisional) (Tr. 300). Dr. Ward indicated that after a period of successful treatment for ADHD, a retest may provide a more accurate estimate of C.D.'s intellectual functioning (Tr. 300).

The record also contains questionnaires completed by C.D.'s elementary school teachers, his middle school teacher, and his middle school counselor wherein they compared C.D.'s functioning to same-age, unimpaired children (Tr. 193-211, 264-79). On January 2, 2018, one of C.D.'s elementary school special education teachers, Kelli Miller, indicated C.D. had either a very serious problem or a serious problem in nine of the thirteen

activities she rated regarding C.D.'s functioning in the domain of attending and completing tasks (Tr. 195). Additionally, she noted C.D. was easily distracted by peers, daydreaming, doodling, and making paper objects (Tr. 195). Ms. Miller also indicated she constantly reminded C.D. to stay on task, to quit making noise that distracted his peers, or to slow down (Tr. 195). Ms. Miller stated that C.D.'s medication enabled him to focus longer, but that he was still working in thirty-minute increments because it was more efficient to do so (Tr. 199). On February 21, 2018, Deborah Ott, also one of C.D.'s elementary school special education teachers, indicated that C.D. had an obvious or slight problem in eleven of the thirteen activities she assessed in the functional domain of attending and completing tasks, but no very serious or serious problems (Tr. 206).

C.D.'s middle school teacher Annette White completed a teacher questionnaire on September 18, 2018 (Tr. 272-79). In the functional domain of attending and completing tasks, Ms. White stated that C.D. had a very serious problem carrying out multi-step instructions, a serious problem focusing long enough to finish his assigned activity or task and working at a reasonable pace/finishing on time, an obvious problem completing class and homework assignments and completing his work accurately without careless mistakes, and a slight problem or no problem in the remaining seven activities she assessed (Tr. 274). She specifically noted that although C.D. had to be reminded to keep working, he wanted to do well (Tr. 274). The following week, C.D.'s middle school counselor (whose name is illegible) found he had a serious problem carrying out multi-step instructions, an obvious problem completing class and homework assignments and completing work accurately without careless mistakes, and a slight problem or no problems in the remaining ten

activities she assessed in the domain of attending and completing tasks (Tr. 266). She specifically noted C.D. made great attempts to complete tasks and was not a disruption (Tr. 266).

On January 18, 2018, state agency psychologist Jason Gunter, Ph.D. reviewed the record and completed a Childhood Disability Evaluation Form (Tr. 69-73). He determined C.D. had a marked limitation in attending and completing tasks, noting, *inter alia,* Ms. Miller's teacher questionnaire and Dr. Ward's diagnoses (Tr. 69-70). His January 2018 assessment pre-dated Ms. Ott's February 2018 opinion, as well as the September 2018 opinions from Ms. White and C.D.'s middle school counselor. On review, state agency psychologist Mary Rolison, Ph.D., who had the benefit of Ms. Ott's opinion when she reviewed the record in April 2018, determined C.D. had a less than marked limitation in attending and completing tasks, noting Ms. Ott's teacher questionnaire was less severe than Ms. Miller's (Tr. 81-82).

At step three in a childhood disability case, the ALJ must determine whether the child's impairment or combination of impairments medically equals or functionally equals the listings. *See Briggs v. Massanari,* 248 F.3d 1235, 1237 (10th Cir. 2001). If a child's impairment or combination of impairments does not meet or medically equal a listing, the ALJ must then determine whether the child's impairment functionally equals the listing, which means that the impairment (or combination of impairments) results in marked limitations in two domains of functioning or an extreme limitation in one domain of functioning. *See* 20 C.F.R. § 416.926a(a). These domains include: (i) acquiring and using information, (ii) attending and completing tasks, (iii) interacting and relating with others,

(iv) moving about and manipulating objects, (v) caring for yourself, and (vi) health and physical well-being. *See* 20 C.F.R. § 416.926a(b)(1)(i)-(vi). When the ALJ determines there is a marked limitation in one of the six domains, he has found the limitation seriously interferes with the "ability to independently initiate, sustain, or complete activities." *Id.* § 416.926a(e)(2)(i). An extreme limitation interferes very seriously with a child's ability to do these things. *Id.* § 416.926a(e)(3)(i). Consideration of functional limitations includes information pertaining to functioning, such as reports of classroom performance, observations from others, or evidence of formal testing. *Id.* § 416.926a(e)(1)(i-ii).

  In his written opinion, the ALJ determined that C.D.'s impairments did not meet, medically equal, or functionally equal a listing. In making these findings, the ALJ summarized the evidence, including, *inter alia,* the testimony of C.D. and his mother, Ms. Green's treatment notes, Dr. Ward's consultative examination, and the questionnaires completed by C.D.'s teachers and counselor (Tr. 19-24). He found Dr. Rolison's opinion that C.D. had a less than marked limitation in his ability to attend and complete tasks was consistent with and supported by the longitudinal evidence of record, noting that several records indicated C.D. improved with medication and was doing well (Tr. 23). The ALJ then discussed the medical evidence with regard to each of the six domains of functioning and concluded that because C.D.'s limitations were not extreme in any of the domains, and were marked in only one, C.D. did not functionally equal a listing (Tr. 25-32). As relevant here, the ALJ found C.D. had a less than marked limitation in the domain of attending and completing tasks (Tr. 26-27). As part of this analysis, the ALJ recounted Ms. Miller's January 2018 opinion and noted each of nine the activities she rated as a very serious or

serious problem for C.D. (Tr. 27). The ALJ rejected Ms. Miller's findings in light of: (i) Ms. Ott's more recent February 2018 opinion, which he noted indicated some obvious problems in C.D.'s ability to attend and complete tasks but nothing serious or very serious; and (ii) C.D.'s middle school counselor's September 2018 opinion, which he noted also indicated only obvious problems with completing class and homework assignments and completing work accurately, as well as a serious problem in his ability to carry out multi-step instructions (Tr. 27). The ALJ also noted Ms. White's September 2018 findings that C.D. had a very serious problem in carrying out multi-step instructions and a serious problem working at a reasonable pace and focusing long enough to finish an assigned activity, but rejected this portion of her opinion because: (i) C.D. was able to memorize football plays by his own testimony, (ii) his grades reflected Bs and Cs, and (iii) he was doing well on medication (Tr. 27).

The claimant's sole contention of error is that the ALJ improperly evaluated the evidence related to the functional domain of attending and completing tasks. Specifically, she asserts that the ALJ mischaracterized and minimized the evidence in discounting Ms. Miller's opinion based on the opinions of Ms. Ott and C.D.'s middle school counselor and by discounting Ms. White's opinion based on the claimant's testimony, grades, and improvement with medication. It is well-established that an ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence." *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004); *see also Carpenter v. Astrue,* 537 F.3d 1264, 1265 (10th Cir. 2008). However, the ALJ is not required to discuss in detail each piece of evidence in the record. *See Clifton*, 79 F.3d at

1009-10. ("The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence."). As discussed below, here the ALJ noted and discussed the findings of C.D.'s treating, consultative, and reviewing physicians, as well as the questionnaires completed by his teachers and counselor, and the undersigned Magistrate Judge finds that the ALJ's conclusion that C.D. has a less than marked limitation in the domain of attending and completing tasks is supported by substantial evidence.

The claimant appears to suggest that the ALJ erred by rejecting Ms. Miller's opinion based solely on the "more recent" opinions of Ms. Ott and C.D.'s counselor. She further takes issue with the ALJ's reliance on C.D.'s self-reported ability to memorize football plays and suggests an alternative *interpretation* of C.D.'s testimony on this point (Tr. 44). Neither of these arguments is supported by the record. As discussed above, the ALJ gave numerous reasons for not finding that the claimant had a "marked" limitation in attending and completing tasks, including noting inconsistencies with Ms. Miller's opinion that caused him to not rely on it. And while the possibility of drawing two different conclusions from the same evidence "does not prevent an administrative agency's findings from being supported by substantial evidence," the undersigned Magistrate Judge may not "displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) [quotation and citation omitted]. *See also Best-Willie v. Colvin,* 514 Fed. Appx. 728, 737 (10th Cir. 2013) ("Having reasonably

discounted the opinions of Drs. Hall and Charlat, the ALJ did not err in failing to include additional limitations in her RFC assessment.").

Finally, despite the claimant's suggestion otherwise, the ALJ suitably noted the claimant's generally good results with medications, as well as adjustments due to side effects (Tr. 367-75, 383, 420-36). And while C.D.'s grades reflect a "D" or an "F" on some *individual assignments,* the ALJ correctly noted his overall grades were "Bs and Cs." (Tr. 187-92). Furthermore, C.D. was in a regular classroom full time and only using the resource room as needed by middle school (Tr. 272). The undersigned Magistrate Judge thus finds that substantial evidence supports the ALJ's decision that C.D. had a less than marked limitation in the domain of attending and completing tasks. The essence of the claimant's appeal here is that the Court should reweigh the evidence and reach a different result, which the Court cannot do. *See, e. g., Casias*, 933 F.2d at 800 ("In evaluating the appeal, we neither reweigh the evidence nor substitute our judgment for that of the agency."). Accordingly, the decision of the Commissioner should be affirmed

## Conclusion

The undersigned Magistrate Judge hereby PROPOSES a finding by the Court that correct legal standards were applied by the ALJ, and the Commissioner's decision is therefore legally correct. The undersigned Magistrate Judge thus RECOMMENDS that the Court AFFIRM the decision of the Commissioner. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 4th day of March, 2021.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**